IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-cr-30015 |
| ) | |
| MICHAEL J. ANDERSON, ) | |
| ) | |
| Defendant. ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Michael Anderson's Motion for Compassionate Release (d/e 27) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

On December 16, 2015, Defendant pled guilty to possessing with the intent to distribute more than 28 grams of a substance containing crack cocaine in violation of 21 U.S.C. § 841(a)(1). On April 11, 2016, the Court sentenced Defendant to 96 months' imprisonment and 8 years of supervised release.

Defendant is currently serving his sentence at FCI Forrest City

Low and has a projected release date of May 12, 2021. He has incurred no disciplinary infractions while at FCI Forrest City Low, where he works as an electrical shop orderly. Memorandum (d/e 29), at 1. As of May 18, 2020, the Bureau of Prisons (BOP) reports that FCI Forrest City Low has 253 confirmed cases of COVID-19. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed May 18, 2020). Defendant tested negative for COVID-19 on May 16, 2020.

According to the Presentence Investigation Report (PSR) prepared for Defendant's sentencing, Defendant reports having been diagnosed with high blood pressure when he was in the custody of the Illinois Department of Corrections. PSR (d/e 17), ¶ 105. The PSR also notes that records from the Sangamon County Jail indicate that Defendant was administered daily medication for high blood pressure. Id. Defendant is listed as standing 5 feet, 6 inches tall and weighing 230 pounds. Id. ¶ 100.

On May 5, 2020, Defendant filed a pro se motion for compassionate release (d/e 26) pursuant to 18 U.S.C. § 3582(c)(1)(A). On May 8, 2020, after the Federal Public Defender's Office was appointed to represent Defendant, an amended Motion

for Compassionate Release was filed. Defendant requests compassionate release due to his health issues—hypertension, hyperlipidemia, and obesity—and the COVID-19 pandemic. Defendant also requests that the Court waive the exhaustion requirement set forth at 18 U.S.C. § 3582(c)(1)(A).

If released from custody, Defendant will reside at his grandmother's house in Springfield, Illinois. The United States Probation Office, in a Memorandum (d/e 30) addressing Defendant's request for compassionate release, concludes that Defendant's grandmother's house is a suitable residence for Defendant.

On May 11, 2020, the Government filed a Response to Defendant's Motion for Compassionate Release (d/e 28). The Government does not oppose Defendant's compassionate release motion.

## II. ANALYSIS

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if

certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for the BOP to file a motion or waiting 30 days from when the inmate's request was received by the BOP, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a

reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Here, because Defendant has not made a request to BOP to file a compassionate release motion on his behalf, the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A) has not been satisfied. Defendant argues that the Court has the authority to waive compliance with this statutory requirement.

Below, the Court addresses whether it has jurisdiction to consider Defendant's motion, whether the Court can waive the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A), and whether Defendant is entitled to compassionate release.

**A.    Jurisdiction**

Federal district courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs. Inc., 545 U.S. 546, 552 (2005). Without jurisdiction, this Court cannot hear Defendant's request for compassionate release. See Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011).

An important distinction exists as to whether a procedural rule is a jurisdictional requirement or a claim-processing rule. See

id. ("This question is not merely semantic but one of considerable practical importance for judges and litigants."); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 160 (2010).  Therefore, "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction."  Henderson, 562 U.S. at 435.  Claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times."  Id.

The U.S. Supreme Court adopted a "bright-line" test for deciding when to classify a procedural rule as jurisdictional.  Arbaugh v. Y & H Corp., 546 U.S. 500, 515-16 (2006).  The inquiry is whether Congress has "'clearly state[d]'" that the rule is jurisdictional."  Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013).  "Absent such a clear statement . . . courts should treat the restriction as nonjurisdictional in character."  Id.

In United States v. Taylor, the Seventh Circuit, overruling its own precedent, held that 18 U.S.C. § 3582(c)(2) sets forth a non-jurisdictional rule.  778 F.3d 667, 671-72 (7th Cir. 2015) ("A district court has subject-matter jurisdiction to consider a motion for relief

under 18 U.S.C. § 3582(c)(2) regardless of whether the moving defendant is actually eligible for such discretionary relief."). Section 3582(c)(2) allows the Court to reduce a term of imprisonment if the defendant was sentenced based on a sentencing range that was subsequently lowered by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(2).

While Taylor did not address § 3582(c)(1)(A), Taylor's reasoning is equally applicable to that statutory subsection. The Court finds that Congress did not "clearly state" in § 3582(c)(1)(A) that the exhaustion requirement is jurisdictional. Therefore, the Court finds that the exhaustion requirement found in 18 U.S.C. § 3582(c)(1)(A) is a claim-processing rule, not a jurisdictional rule. See Henderson, 562 U.S. at 435 (noting that claim-processing rules merely require "that the parties take certain procedural steps at certain specified times"); United States v. Haney, 2020 WL 1821988, at *2 ("The exhaustion requirement provides "who -- the BOP or defendant -- may move for compassionate release and when such a motion may be made.").

B. **Waiver of the Exhaustion Requirement**

Although the Court has jurisdiction to hear Defendant's

motion, Defendant has not met the exhaustion requirement set forth in § 3582(c)(1)(A).  The Court must determine whether it has the authority to waive the 30-day waiting period of the exhaustion requirement.

In the short time the COVID-19 pandemic has wreaked havoc on this country, many federal judges have considered this issue. Some judges have found that they have the discretion to waive the 30-day requirement in light of the serious risks associated with COVID-19.  See, e.g., United States v. Scparta, 2020 WL 1910481 (S.D.N.Y. April 19, 2020); United States v. Guzman Soto, 2020 WL 1905323 (D. Mass. Apr. 17, 2020)  United States v. Russo, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); United States v. Smith, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); United States v. Bin Wen, 2020 WL 1845104, at *4-7 (W.D.N.Y. Apr. 13, 2020); United States v. Haney, 2020 WL 1821988, at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Sawicz, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020); United States v. McCarthy, 2020 WL 1698732 (D. Conn. Apr. 8, 2020); United States v. Colvin, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); United States v. Perez, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020).  Other judges have held that the 30-day requirement

is mandatory, not subject to any exception.  See, e.g., United States v. Cox, 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020); United States v. Demaria, 2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020); United States v. Rensing, 2020 WL 1847782, at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Roberts, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); United States v. Woodson, 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020).

Equitable exceptions to statutory rules have been recognized in the past.  See Holland v. Florida, 560 U.S. 631, 645-46 (2010) (noting that "a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of equitable tolling"); Hamer v. Neighborhood Hous. Servs. of Chicago, 138 S. Ct. 13, 18 n.3 (2017) (reserving on the issue of "whether mandatory claim-processing rules may be subject to equitable exceptions" other than waiver and forfeiture).  Other circuit courts have recognized equitable exceptions since the Supreme Court's decision in Ross v. Blake, 136 S. Ct. 1850 (2016).  See Grewal v. Cuneo Gilbert & LaDuca LLP, 2020 WL 897410, at *1 (2d Cir. Feb. 25, 2020) ("We have held that Rule 4(a)'s 28-day deadline is not jurisdictional, but is a 'claim-processing rule' and, as such, its

enforcement is subject to waiver, forfeiture, and other equitable exceptions."); Fed. Ins. Co. v. United States, 882 F.3d 348, 361 (2d Cir. 2018) ("Claim-processing rules, much like statutes of limitations, . . . may be subject to equitable tolling doctrines.").

In Ross, the Supreme Court considered the exhaustion requirements of the Prison Litigation Reform Act (PLRA), which stated that "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 136 S. Ct. at 1856.  The Supreme Court held that the exhaustion of administrative remedies was mandatory because the statutory language "suggest[ed] no limits on an inmate's obligation to exhaust." Id.  As in Ross, the exhaustion requirement at issue here is imposed by statute, not case law, so the Court has less authority to recognize exceptions. Id. at 1857 ("[J]udge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions.  But a statutory exhaustion provision stands on a different footing.  There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to.") (citation omitted).

The statutory text of § 3582(c)(1)(A) and the congressional

intent for implementing amendments to that section substantially differ from the PLRA. With respect to the PLRA, Congress amended 42 U.S.C. § 1997e(a) to make "exhaustion provisions mandatory." Historical and Statutory Notes, 42 U.S.C.A. § 1997e (West Supp. 1997). Quite the opposite is true for § 3582(c)(1)(A), as the First Step Act extended to inmates the ability to file motions for compassionate release.

In addition, as recognized in Haney, § 3582(c)(1)(A) is not "an exhaustion requirement in the traditional sense." 2020 WL 1821988, at *3. Section 3582(c)(1)(A) does not require the inmate to fully exhaust BOP procedures before coming to court. The PLRA, on the other hand, does require complete exhaustion of available administrative remedies. See Guzman Soto, 2020 WL 1905323, at *5 ("This alternative to exhaustion suggests that Congress understood that some requests for relief may be too urgent to wait for the BOP's process."); Haney, 2020 WL 1821988, at *3 ("But the hybrid requirement in this statute – either exhaust or wait 30 days – substantially reduces the importance of the first purpose, as it allows a defendant to come to court before the agency has rendered a final decision."). This Court agrees with the reasoning expressed

in <u>Guzman Soto</u>:

> While a court may certainly decline to consider a motion where Defendant has not waited thirty days, nothing in the statutory scheme suggests that Congress intended to preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks compassionate release.

<u>Guzman Soto</u>, 2020 WL 1905323, at *5.

Mandating the exhaustion requirement in this case and other cases around the country during the COVID-19 pandemic cannot be what Congress intended. Based on the House Report for the First Step Act, the statute is designed to "enhance public safety" and "make . . . changes to Bureau of Prisons' policies and procedures to ensure prisoner and guard safety and security." H.R. Rep. 115-699 at 22; <u>see also</u> <u>Scparta</u>, 2020 WL 1910481, at *7. Denying Defendant's motion without reaching the merits, only to order Defendant to make a request to BOP and wait 30 days, would frustrate these purposes. In that time, Defendant is at a high risk of contracting a deadly illness based on the realities of BOP facilities, causing irreparable harm and rendering his request for compassionate release futile.

The Court concludes that § 3582(c)(1)(A) does not require the

Court to wait to consider a compassionate release request if there is a credible claim of serious and imminent harm from this pandemic. That does not mean the Court will waive the 30-day period in all cases. The decision must be made on a case-by-case basis. In this case, the Court finds that the 30-day requirement should be waived. The Court excuses Defendant's failure to file a request with the BOP for compassionate release and wait 30 days from the BOP's receipt of the request before seeking relief pursuant to 18 U.S.C. § 3582(c)(1)(A).

### C.    Eligibility for Compassionate Release

As Defendant's motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release. For Defendant to be eligible for compassionate release, the Court, after considering the factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Defendant's term of imprisonment and that the reduction is "consistent with applicable policy statements issues by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

#### 1.    Extraordinary and Compelling Reasons for Release

Having considered the relevant factors set forth in 18 U.S.C. §

3553(a), the Court concludes that Defendant has established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment. The spread of COVID-19 presents extraordinary and unprecedented challenges for the country and creates a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Socially distancing can be difficult for individuals living or working in a prison.

Defendant suffers from hypertension, a condition that increases the serious risks that COVID-19 presents for Defendant. Indeed, the CDC has identified hypertension as a comorbidity that increases the likelihood of serious complications from COVID-19. See Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed April 24, 2020) ("Patients in China with no reported underlying medical conditions had an overall case fatality of 0.9%, but case fatality was higher for patients with comorbidities: 10.5%

3:15-cr-30015-SEM-TSH   # 31   Page 15 of 18

for those with cardiovascular disease, 7.3% for diabetes, and approximately 6% each for chronic respiratory disease, hypertension, and cancer.  Heart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes.").  Given the number of confirmed COVID-19 cases at FCI Forrest City Low, Defendant has a significant chance of contracting the disease if he remains incarcerated there.

In addition, Defendant has approximately one year remaining on his sentence and had committed no infractions while in BOP custody.  See Memorandum (d/e 29), at 1.  Defendant serves as an electrical shop orderly at FCI Forrest City Low.  Id.  Defendant's offense of conviction is a nonviolent drug crime, and Defendant has a supportive grandmother who is willing to allow Defendant to live with her if Defendant is released.  See Memorandum (d/e 30), at 1.

  2. <u>Sentencing Commission Policy Statements</u>

A reduction of Defendant's term of imprisonment is consistent with the Sentencing Commission's policy statements.  The relevant policy statement, § 1B1.13 of the Sentencing Guidelines, explains that a sentence reduction under § 3582(c)(1)(A) may be ordered

where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13.

The commentary to § 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a sentence reduction.[1]  U.S.S.G. § 1B1.13 cmt. n.1.  One of the circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).  Another circumstance is where "an extraordinary and compelling reason other than, or in combination with," the listed circumstances is present.  U.S.S.G. § 1B1.13 cmt. n.1(D).  Defendant's health issues and the COVID-19

---

[1] Section 1B1.13 of the Sentencing Guidelines has not been amended to reflect the First Step Act's amendment to 18 U.S.C. § 3582(c)(1)(A).  As it stands, § 1B1.13 refers to a reduction "upon the motion of the Director of the Bureau of Prisons."  No policy statement provides guidance for when a defendant files a motion.  Nevertheless, the Court considers § 1B1.13.

pandemic create an extraordinary and compelling reason that warrants a reduction of Defendant's term of imprisonment.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community. See U.S.S.G. § 1B1.13. If Defendant quarantines himself at his grandmother's home away from his grandmother, he will diminish the risk of spreading the virus. Otherwise, the Court does not find that Defendant, who is serving a sentence for a nonviolent drug offense, poses a danger to the community.

Defendant has established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). Such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Accordingly, Defendant has satisfied the requirements to be eligible for compassionate release, and the Court finds that compassionate release is appropriate in this case.

### III. CONCLUSION

For the reasons set forth above, Defendant Michael Anderson's Motion for Compassionate Release (d/e 27) is GRANTED. The Court hereby reduces Defendant's term of imprisonment from 96

months to time served.  The Court modifies Defendant's conditions of supervised release to require Defendant to spend 14 days in home confinement, with the home confinement starting as soon as possible after his term of supervised release begins.  During his term of home confinement, Defendant shall be monitored by telephone.  All other aspects of Defendant's sentence shall remain the same.  Defendant's pro se motion for compassionate release (d/e 26) is DENIED as MOOT.

The Bureau of Prisons is ORDERED to release Defendant within 24 hours.  The Clerk is DIRECTED to send a copy of this Opinion to FCI Forrest City Low.  Defendant must self-quarantine for a period of 14 days beginning at the time of his release, including while he travels from FCI Forrest City Low to his grandmother's house.  Defendant shall travel to Springfield, Illinois, in a vehicle that allows him to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER:  May 18, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE